**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **MARK JONES, MICHELLE GOULD, DICKY WARREN, and CARL JUNG,** on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>v.<br><br>**STURM, RUGER & COMPANY, INC.,** and **FREESTYLE SOFTWARE, INC.,**<br><br>      Defendants. | Case No. 3:22-cv-01233-KAD |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iv

MEMORANDUM IN SUPPORT ........................................................................................... 1

I.      INTRODUCTION ........................................................................................... 1

II.     BACKGROUND ............................................................................................. 2

     A.    The Data Incident .................................................................................. 2

     B.    Plaintiffs' Amended Complaint ............................................................. 3

     C.    History of Negotiations and Settlement ................................................. 4

III.    SUMMARY OF SETTLEMENT ...................................................................... 5

     A.    Settlement Class Member Benefits ........................................................ 5

          1.    Monetary Relief .......................................................................... 6

          2.    Injunctive Relief ......................................................................... 6

     B.    The Release ........................................................................................... 7

     C.    The Notice and Claim Process ............................................................... 7

          1.    Notice ........................................................................................... 7

          2.    Claims .......................................................................................... 8

          3.    Requests for Exclusions and Objections ...................................... 9

     D.    Fees, Costs, and Service Awards ........................................................... 9

IV.    LEGAL AUTHORITY ................................................................................... 10

V.     LEGAL DISCUSSION .................................................................................. 11

     A.    The Settlement Class Should Be Preliminarily Approved .................... 11

          1.    The Settlement Class is sufficiently numerous .......................... 13

          2.    Questions of law and fact are common to the Settlement Class ... 13

          3.    Plaintiffs' claims and defenses are typical of the Settlement Class .......... 15

          4.    Plaintiffs and Class Counsel will provide fair and adequate representation for the Settlement Class ...................................... 15

5.     Because common issues predominate over individualized ones, class treatment is superior ..........................................................................16

B.     The Settlement Terms are Fair, Adequate, and Reasonable ................................18

1.     The Settlement was the result of arm's-length negotiations between the Parties with the involvement of a mediator ....................................20

2.     The Settlement provides substantial relief to the Settlement Class, particularly in light of the uncertainty of prevailing on the merits ............21

3.     Continued litigation is likely to be complex, lengthy, and expensive..........................................................................................22

4.     The Settlement was reached after significant investigation and exchange of information ..........................................................................22

5.     The reaction of the Settlement Class has been positive ...........................23

C.     The Settlement Should be Approved Under Rule 23(e)(2) ...................................23

D.     The Settlement Administrator Will Provide Adequate Notice ..............................24

VI.     CONCLUSION....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Alcantara v. CNA Mgmt., Inc.*,
  264 F.R.D. 61 (S.D.N.Y. Dec. 8, 2009) .................................................................................. 13

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................................... 15, 16, 17

*Bolanos v. Norwegian Cruise Lines Ltd.*,
  212 F.R.D. 144 (S.D.N.Y. Nov. 26, 2002) ........................................................ 15, 16

*Bourlas v. Davis Law Assocs.*,
  237 F.R.D. 345 (E.D.N.Y. Aug. 30, 2006) ........................................................ 11, 19

*Capsolas v. Pasta Res. Inc.*,
  No. 10-cv-5595, 2012 WL 1656920 (S.D.N.Y. May 9, 2012) ................................ 20

*Castagna v. Madison Square Garden, L.P.*,
  No. 09-cv-10211, 2011 WL 2208614 (S.D.N.Y. June 7, 2011) ............................ 23

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ......................................................................... 18, 21

*Clark v. Ecolab Inc.*,
  Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672,
  2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ......................................................... 19

*Cohen v. J.P. Morgan Chase & Co.*,
  262 F.R.D. 153 (E.D.N.Y Sept. 24, 2009) ........................................ 10, 11, 12, 16, 19

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ......................................................................................... 13

*D'Amato v. Deutsche Bank*,
  236 F.3d 78 (2d Cir. 2001) .......................................................................................... 20

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir.2006) ......................................................................................... 10

*Denney v. Jenkens & Gilchrist*,
  230 F.R.D. 317 (S.D.N.Y. Feb. 18, 2005) ................................................................... 10

*Fox v. Cheminova*,
  213 F.R.D. 113 (E.D.N.Y. Feb. 28, 2003) .................................................................... 16

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005).............................................................................. 19

*Freeland v. AT & T Corp.*,
   238 F.R.D. 130 (S.D.N.Y. Aug. 17, 2006) ............................................................... 14

*Hammond v. The Bank of N.Y. Mellon Corp.*,
   No. 08 Civ. 6060, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)........................... 21

*Hapka v. CareCentrix, Inc.*,
   No. 2:16-CV-02372-KGG, 2018 WL 1871449 (D. Kan. Feb. 15, 2018) ................ 17

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
   239 F.R.D. 363 (S.D.N.Y. Jan. 29, 2007)................................................................ 13

*In re Agent Orange Prod. Liab. Litig.*,
   818 F.2d 145 (2d Cir. 1987)..................................................................................... 16

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. Aug. 15, 2018) ............................................................. 17

*In re Flag Telecom Holdings, Ltd. Securities Litig.*,
   574 F.3d 29 (2d Cir. 2009)....................................................................................... 15

*In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*,
   293 F.R.D. 21 (D. Me. 2013).................................................................................... 22

*In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*,
   851 F. Supp. 2d 1040 (S.D. Tex. 2012) ............................................................ 12, 17

*In re Interpublic Sec. Litig.*,
   No. 02-cv-6527, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)............................... 22

*In re Nasdaq Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. Oct. 16, 1997) .................................................... 11, 19, 20

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ............................................................................... 20

*In re Target*,
   309 F.R.D. 482 (D. Minn. 2015).............................................................................. 12

*In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   2016 WL 6902351 (N.D. Ga. Aug. 23, 2016) ........................................................ 17

*In re Traffic Executive Ass'n,*
   627 F.2d 631 (2d Cir. 1980)..................................................................................... 19

*Jackson v. Bloomberg, L.P.*,
  298 F.R.D. 152, (S.D.N.Y. Mar. 19, 2014) ............................................................ 14

*Lizondro-Garcia v. Kefi LLC*,
  300 F.R.D. 169 (S.D.N.Y. May 29, 2014) ........................................................ 10, 13

*Marisol A. v. Giuliani*,
  126 F.3d 372 (2d Cir.1997) .................................................................... 12, 13, 15

*Maywalt v. Parker & Parsley Petroleum Co.*,
  67 F.3d 1072 (2d Cir. 1995) ........................................................................ 19

*Moses v. N.Y. Times Co.*,
  79 F.4th 235 (2d Cir. 2023) .................................................................. 20, 24

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) .................................................................................. 24

*Palacio v. E*TRADE Fin. Corp.*,
  No. 10-cv-4030, 2012 WL 1058409 (S.D.N.Y. Mar. 12, 2012) ............................. 19

*S.p.A. Sec. Litig. (In re Luxottica Group Litig.)*,
  233 F.R.D. 306 (E.D.N.Y. 2006) .................................................................... 10

*Steinberg v. Nationwide Mut. Ins. Co.*,
  224 F.R.D. 67 (E.D.N.Y. Sept. 4, 2004) .......................................................... 12

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .................................................................................. 13

**Rules**

Fed. R. Civ. P. 23 ........................................................................................ 12, 14

Fed. R. Civ. P. 23(a) .............................................................................. 10, 12, 16

Fed. R. Civ. P. 23(a)(1) ................................................................................ 13

Fed. R. Civ. P. 23(a)(2) ................................................................................ 13

Fed. R. Civ. P. 23(a)(3) ................................................................................ 14

Fed. R. Civ. P. 23(b) .................................................................................... 10

Fed. R. Civ. P. 23(b)(3) ............................................................................ 12, 24

Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 24

Fed. R. Civ. P. 23(e) ........................................................................ 10, 11, 23

Fed. R. Civ. P. 23(e)(1) ............................................................................................ 24

Fed. R. Civ. P. 23(e)(2) ............................................................................. 18, 23, 25

Fed. R. Civ. P. 23(e)(3) ............................................................................................ 24

**Other Authorities**

*Manual for Complex Litigation*, § 30.41 ............................................................. 11, 20

*Newberg on Class Actions* § 11.25 ............................................................................ 19

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION**
**FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs Mark Jones, Michelle Gould, Dicky Warren, and Carl Jung ("Plaintiffs" or "Class Representatives"), on behalf of the Settlement Class,[1] respectfully submit this Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement.

## I.    INTRODUCTION

This Action arises from a Data Incident that Plaintiffs allege compromised the Personal Information of at least 168,000 individuals. Under the proposed Settlement, which is memorialized in the Settlement Agreement and associated exhibits, Defendants Freestyle Software, Inc. ("Freestyle") and Sturm, Ruger & Company, Inc. ("Ruger") will create a $1,500,000 non-reversionary cash Settlement Fund for the benefit of the Settlement Class.

The Settlement presented for the Court's consideration is fair, reasonable, and adequate. After deduction of any Court-awarded attorneys' fees and costs, Service Awards, and Settlement Administration Costs including taxes, Settlement Class Members who submit Valid Claims will receive significant consideration, including Compensation for Out-of-Pocket Losses and Lost Time incurred as a result of the Data Incident, and a Pro Rata Cash Payment that shall be calculated depending on the number of claims filed and approved and subject to a maximum payment of $175. *See* Joint Declaration of Class Counsel Mason A. Barney, Gary M. Klinger, And Justin C. Walker in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Joint Decl.") ¶¶ 18-20, attached as ***Exhibit 1***. Plaintiffs and proposed Class Counsel reached the Settlement with Freestyle and Ruger following months of arm's length negotiations

---

[1] All capitalized terms herein shall have the same meaning as those defined in Section II of the Settlement Agreement and Releases attached hereto as ***Exhibit A*** to the Joint Declaration in Support of Preliminary Approval.

and several meditation sessions before an experienced data breach mediator, Hon. John W. Thorton (Ret.) of JAMS. *Id.* ¶¶ 10-12. Class Counsel have considerable experience in data breach litigation and are keenly aware of the strengths and weaknesses of litigating the Action. Notwithstanding their confidence in the merits of their claims, Plaintiffs recognize the challenges and risks inherent in litigation, trial, and appeals, including certification of any class, and Freestyle and Ruger's various defenses as to standing, liability, and other affirmative defenses. *Id.* ¶¶ 40-44. The Settlement will also avoid further delay in providing relief to the Settlement Class and expensive and protracted litigation with uncertain results. *Id.* ¶¶ 16-18.  In exchange for the above-referenced consideration, Plaintiffs and all Settlement Class Members will release Freestyle, Ruger, and the other Released Parties from the claims in the Action.

## II.    BACKGROUND

### A.    The Data Incident

Freestyle is a software services company that provides retailers and other ecommerce firms with inventory, order, and customer management software solutions. *See* SA § I(1). Ruger is one of Freestyle's customers that uses Freestyle's online services for its website ShopRuger.com. *See* SA §§ I(2), (I)(4).  Ruger is one of the nation's leading firearms manufacturers for the commercial sporting market as well as a retailer of other firearm related accessories. *See* SA § I(2). Through the operation of the ShopRuger.com website and other websites,  Personal Information  including, but not limited to, full names, addresses, credit or debit card information, description of the product purchased, and the price and the number of items purchased, belonging to Plaintiffs and Settlement Class Members was collected and stored on Freestyle's servers.

On February 2, 2022, a Freestyle customer informed Freestyle of a potential information security issue of which Freestyle had not been aware. SA § I(3). Shortly thereafter, Freestyle

retained Verizon to conduct a PCI Forensic Investigation and assist in investigating the Data Incident. Verizon conducted a thorough and independent PCI Forensic Investigation of the nature and scope of the Data Incident as well as assisted in Freestyle's containment and remediation efforts. *Id*. All Plaintiffs received a notice letter from Ruger informing them that their personally identifiable information and payment card data may have been involved in the Data Incident. SA § I(5).

### B.    Plaintiffs' Amended Complaint

As a result, on October 4, 2022, Plaintiff Jones filed a Class Action Complaint, *Jones v. Sturm, Ruger & Co., Inc.*, Case No. 3:22-cv-01233-KAD (D. Conn.), against Ruger, seeking to represent a nationwide class of aggrieved individuals and asserting causes of action for: (1) negligence; (2) breach of implied contract; and (3) unjust enrichment. [DE #1].

Following the filing of *Jones*, Ruger and Freestyle were named defendants in two other putative class actions filed in the District of New Jersey[2] that were materially and substantively identical, as they have overlapping claims, seek to represent the same putative Settlement Class Members, and arise out of the same Data Incident. Freestyle and Ruger, at all material times, dispute the allegations in this Action and the other complaints.

On January 16, 2023, Plaintiff Warren and Jung voluntarily dismissed their action. On January 19, 2023, Plaintiffs Lauren Copeland and Lee Woods voluntarily dismissed their action. On December 5, 2022, Plaintiff Jones and Defendant Ruger filed a joint motion for entry of a stipulated scheduling order to file an Amended Complaint containing the allegations of the other filed cases. [DE # 13]. This Request was granted by the Court on December 13, 2022. [DE # 18].

---

[2] *Warren, et al. v. Freestyle Software, Inc.*, No. 2:22-CV-05533 (D.N.J.) and *Copeland, et al. v. Sturm, Ruger & Company, Inc. et al.*, 2:22-CV-06302, (D.N.J.).

On January 20, 2023, Plaintiffs filed an Amended Class Action Complaint, which is the current, operative complaint, and which further added Defendant Freestyle and Plaintiffs Copeland, Woods, Jung, and Warren to the action. [DE # 23]. In the Complaint, Plaintiffs allege that the Data Incident put them at risk of imminent, immediate, and continuing risk of harm from fraud and identity theft. *Id.* They also allege that they, and other Settlement Class Members, were forced to spend time dealing with the effects of the Data Incident and have or may incur out-of-pocket costs in the form of bank fees or the cost of credit monitoring services directly or indirectly related to the Data Incident. *Id.* After filing the Amended Class Action Complaint, both Defendants filed separate motions to dismiss. [DE # 52-53]. Thereafter, the Parties engaged in fact and expert discovery. SA § I(7). The Court dismissed the negligence claim under the economic loss doctrine as to both Freestyle and Ruger. [DE # 74]. Only the claims for breach of implied contract and unjust enrichment remain against Freestyle. *Id.* Only the claim for breach of express contract remains against Ruger. *Id.* On January 7, 2025, Plaintiffs filed a Notice of Death of Plaintiff Lee Woods. [DE # 107]. On February 27, 2025, Plaintiff Lauren Copeland voluntarily dismissed her claims by stipulation with Defendants.

### C.    History of Negotiations and Settlement

Shortly after the Court issued its order on Defendants' Motions to Dismiss, the Parties began discussing settlement and scheduled a mediation for October 8, 2024. Joint Decl. ¶ 10. In advance of the mediation, the Plaintiffs and Defendants engaged in extensive fact and expert discovery *Id.* ¶ 9. Through discovery, Plaintiffs were able to determine, among other things, the nature and cause of the Data Incident, the number and geographic location of victims impacted by the Data Incident, and the specific types of information breached. *Id.* ¶¶ 9, 11.

On December 6, 2024, the Parties reached agreement on the material terms of the

settlement following several protracted negotiations and mediations with the Hon. John W. Thorton (Ret.) from JAMS. *Id.* ¶¶ 9, 11 SA § I(8). The Parties agreed to settle the Action entirely, without any admission of liability or wrongdoing, with respect to all Released Claims of the Releasing Parties and to recover on the claims asserted in the Complaint, thus avoiding the risk, delay, and uncertainty of continued litigation. SA § I(10).

## III.    SUMMARY OF SETTLEMENT

### A.    Settlement Class Member Benefits

The settlement negotiated on behalf of the Class provides for a non-reversionary Settlement Fund of US $1,500,000.00 to pay for: (1) Service Awards to Class Representatives awarded by the Court, (2) attorneys' fees and costs awarded by the Court to Class Counsel, (3) all Settlement Administration Costs, and (4) Settlement Class Member Benefits to Settlement Class Members. SA § II(37), (65), III(70); Joint Decl. ¶ 19. The Settlement Agreement provides for three types of monetary payments in addition to injunctive relief in the form of security measures Freestyle implemented following the Data Incident. SA § V(75)-(76); Joint Decl. ¶ 18.

The Settlement Class is defined as:

[A]ll living individuals residing in the United States who were sent a notice by Ruger that their Personal Information may have been impacted in the Data Incident or whose Personal Information was otherwise impacted and/or exfiltrated by the Data Incident, as well as all living individuals residing in the United States whose data was exfiltrated in the Data Incident.

SA § II(62). Excluded from the Settlement Class are (a) all persons who are employees, directors, officers, and agents of Defendants; (b) governmental entities; and (c) the Judge assigned to the Action, that Judge's immediate family, and Court staff. *Id.*

The Settlement Class includes at least 168,000 individuals who may choose to receive one or all of the following Settlement Benefits. Joint Decl. ¶ 18.

5

### 1.     *Monetary Relief*

Under the terms of the Settlement, Settlement Class Members may receive cash Compensation for Out-of-Pocket Losses fairly traceable to the Data Incident, up to a total of $4,500. SA § V(75). A claim for Compensation for Out-of-Pocket Losses may be combined with a claim for Compensation for Lost Time and/or a claim for a Pro Rata Cash Payment subject to a $4,500 individual cap. *Id.*

The Settlement further provides for Compensation for Lost Time spent remedying issues related to the Data Incident of $25.00 per hour up to five hours (a total of $125.00). SA § V(75)(b). Claims for Lost Time can be combined with claims for Compensation for Out-of-Pocket Losses but are subject to the $4,500.00 individual cap. *Id.*

In addition to selecting Compensation for Losses and Lost Time, a Settlement Class Member may also elect to receive a Pro Rata Cash Payment, which is estimated to be $50, subject to a *pro rata* increase or decrease not to exceed $175. SA § V(75)(c). No documentation or attestation is required. Claims for Pro Rata Cash Payments can be combined with claims for Compensation for Out-of-Pocket Losses and Compensation for Lost Time but are subject to the $4,500.00 individual cap. *Id.*

### 2.     *Injunctive Relief*

Freestyle has agreed to provide Class Counsel, prior to the Final Approval Hearing, with a "Security Attestation" attesting to the security measures it is implementing following the Data Incident. Freestyle will confirm that all of these security measures have been implemented. SA § V(76). The costs of any such security measures on the part of Freestyle shall be fully borne by Freestyle, and under no circumstances will such costs be deducted from the Settlement Fund. *Id.*

Freestyle will provide the costs of such security measures to Class Counsel and such costs shall be considered a benefit of the Settlement. *Id.*

### B.     The Release

The Releases are tailored to the claims "relating to the Data Incident," i.e., that have been pled or could have been pled in this Action. Settlement Class Members who do not opt-out of Settlement will release all claims, whether known or unknown, against Defendants Ruger and Freestyle and their affiliates, that relate to the Data Incident. SA § XIII(111).

### C.     The Notice and Claim Process

#### 1.     Notice

The Parties mutually agreed to, and now seek Court approval of, the appointment of Verita Global, LLC, formerly known as KCC Class Action Services, LCC or KCC ("Verita") – a firm with considerable experience in notice and settlement administration —including other data breach settlements—as Settlement Administrator. *See* Declaration of Janeth Antonio of Verita regarding the Settlement Notice Plan ("Verita Decl."), attached hereto as Exhibit C. The Settlement Administrator shall administer various aspects of the Settlement under the supervision of the Parties' counsel. SA §§ VII(79)-(81).

The Notice Program provides that within 30 days of entry of the Preliminary Approval Order, Email Notice will be sent to all Settlement Class Members. To the extent an email address is not known, or to the extent an email is undeliverable, the Settlement Administrator will send Postcard Notice to the last postal address that Defendants have on record for each Settlement Class Member. SA § VIII(83). Additionally, to the extent that any Settlement Class Members cannot be identified, notice by publication, with respect to the proposed class action settlement, is sufficient

for such Settlement Class Members. *Id*. The Settlement Administrator will also perform reasonable address traces for undeliverable Postcard Notices. SA § VIII(90).

The Settlement Fund amount provided by Defendants, or on behalf of Defendants, will pay the entirety of the Notice and administrative expenses, including the cost of Notice. Joint Decl. ¶ 19. The Email Notice and Postcard Notice shall include, among other information: a description of the material terms of the Settlement; how to submit a Claim Form; the Claim Form Deadline; the last day of the Opt-Out Period for Settlement Class Members to opt-out of the Settlement Class; the last day of the Objection Period for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; the Final Approval Hearing date; and the Settlement Website address at which Settlement Class Members may access this Agreement and other related documents and information. SA § VIII(84).

The Long Form Notice also shall include a procedure for Settlement Class Members to opt-out of the Settlement Class, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the opt-out instructions. SA § VIII(86). The Long Form Notice also shall include a procedure for Settlement Class Members to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards, and the Postcard Notice shall direct Settlement Class Members to review the Long Form Notice to obtain the objection instructions. SA § VIII(87).

### 2. *Claims*

The timing of the Claims process is structured to ensure that all Settlement Class Members have adequate time to review the terms of the Agreement, compile documents supporting their Claim, and decide whether they would like to opt-out or object. Joint Decl. ¶ 36. Settlement Class Members must submit their Claim Form to the Settlement Administrator by the Claim Form

Deadline, which is 90 days from the date that Notice is first disseminated to the Settlement Class, either by mail or online. SA §§ II(16), IX(93). The Claim Form is written in plain language to facilitate ease in completion. SA Ex. 4, Joint Decl. ¶ 37. The Settlement Administrator will review the Claim Forms and determine if they are complete and valid. SA § IX(94).

### 3.    *Requests for Exclusions and Objections*

Settlement Class Members will have up to 60 days after the Notice Deadline to object to or to submit a request to opt-out of the Settlement. SA §§ II(42)-(43). Similar to the timing of the Claims process, the timing with regard to objections and requests for exclusion is structured to give Settlement Class Members sufficient time to access and review the Settlement documents—including Plaintiffs' Application for Attorneys' Fees, Costs, and Service Awards, which will be filed 14 days before the original date set for the Final Approval Hearing. *Id*. § X(104).

### D.    Fees, Costs, and Service Awards

The Settlement Agreement calls for reasonable Service Awards to Plaintiffs of up to $3,500.00 each. SA § XI(106); Joint Decl. ¶ 38. The Service Awards are meant to compensate Plaintiffs for their efforts on behalf of the Settlement Class, including maintaining contact with Class Counsel, assisting in the investigation of the Action, remaining available for consultation throughout the mediation, and answering Class Counsel's many questions. Joint Decl. ¶ 38.

After agreeing to the terms of the Settlement on behalf of the Settlement Class, Class Counsel negotiated their fees and costs separate from the Settlement Class Member Benefits, in an amount not to exceed 33.33% of the Settlement Fund, plus reasonable expenses not to exceed $35,000. SA § XI(107); Joint Decl. ¶ 39.

Plaintiffs will file their Motion for Final Approval of the Settlement, inclusive of the Application for Attorneys' Fees, Costs, and Service Awards, prior to Settlement Class Members'

deadline to opt-out of or object to the Settlement Agreement. SA § X(104).

## IV.     LEGAL AUTHORITY

Federal courts strongly encourage settlements, particularly in class actions and other complex matters where inherent costs, delays, and risks of continued litigation might otherwise outweigh any potential benefit the individual Plaintiff—or the class—could hope to obtain. *See Cohen v. J.P. Morgan Chase & Co.*, 262 F.R.D. 153, 157 (E.D.N.Y Sept. 24, 2009) ("There is a strong judicial policy in favor of settlement, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy.") (quoting *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 328 (S.D.N.Y. Feb. 18, 2005) (*aff'd in part and vacated in part*, 443 F.3d 253 (2d Cir. 2006))). "Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. There is a strong public interest in quieting any litigation; this is 'particularly true in class actions.'" *In re Luxottica Group S.p.A. Sec. Litig. (In re Luxottica Group Litig.)*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (citations omitted).

Plaintiffs bring this motion pursuant to Federal Rule Civil Procedure 23(e), under which a class action may not be settled without approval of the Court. In determining whether to preliminarily approve a class action settlement, courts must first determine that the settlement class, as defined by the parties, is certifiable under the standards of Rule 23(a) and (b). "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir.2006) (concluding in part that "the District Court conducted a Rule 23(a) and (b) analysis that was properly independent of its Rule 23(e) fairness review"); *see also Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 174 (S.D.N.Y. May 29, 2014).

Then, as part of Rule 23(e)'s "fairness, reasonableness, and adequacy" inquiry, courts must determine whether the terms of a proposed settlement warrant preliminary approval. Courts in this Circuit find preliminary approval of a proposed class action settlement is warranted where it is the result of "serious, informed, non-collusive ('arm's length') negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies. . . and where the settlement appears to fall within the range of possible approval." *See Cohen*, 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. Oct. 16, 1997); *Bourlas v. Davis Law Assocs.*, 237 F.R.D. 345, 355 (E.D.N.Y. Aug. 30, 2006); *see also Manual for Complex Litigation*, § 30.41.

In granting preliminary approval, courts direct notice to be provided to settlement class members, who are given the opportunity to exclude themselves from or object to the settlement. *In re Nasdaq Antitrust Litig.*, 176 F.R.D. at 102. At the final approval hearing, settlement class members may be heard by the court prior to its determination of whether to grant final approval of the settlement and dismiss the case. *Id.*

Because cases like the one at issue here, if handled on an individual basis, would heavily tax the system and cause large and unwarranted expenditures of both public and private resources, the proposed Settlement is the best vehicle for Settlement Class Members to receive relief in a prompt and efficient manner. As set forth below, the Settlement here warrants Preliminary Approval so that individuals in the Settlement Class can be notified of the Settlement and provided an opportunity to voice exclusion or objection.

## V.    LEGAL DISCUSSION

### A.    The Settlement Class Should Be Preliminarily Approved.

Courts within this Circuit follow the guidelines set forth in the *Manual for Complex Litigation (Fourth)*, and advise that in cases presented for both preliminary approval and class

certification, the "judge should make a preliminary determination that the proposed class satisfies [Rule 23] criteria[.]" § 21.632.

Rule 23(a) sets out four specific prerequisites to class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law and fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the representative parties must fairly and adequately protect the interests of the class. Further, under Rule 23(b)(3), the Court must find that common questions of law or fact predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

"In deciding certification, 'courts must take a liberal rather than restrictive approach in determining whether the plaintiff satisfies these requirements and may exercise broad discretion in weighing the propriety of a putative class.'" *Cohen*, 262 F.R.D. at 158 (quoting *Steinberg v. Nationwide Mut. Ins. Co.*, 224 F.R.D. 67, 72 (E.D.N.Y. Sept. 4, 2004)); *see also Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir.1997) ("Rule 23 is given a liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification.).

Class actions are regularly certified for settlement. In fact, similar data breach cases have been certified—on a national basis—including in this District. *See, e.g.*, *Mathis v. Planet Home Lending, LLC (In re: Planet Home Lending, LLC Data Breach)*, Case No. 3:24-cv-00127-KAD at Dkt. No. 44 (D. Conn. May 13, 2024); *see also* the record-breaking settlement in *In re Equifax, Inc. Customer Data Sec. Breach Litig.*, No. 1:17-md-2800-TWT at Dkt. No. 773 (N.D. Ga. July 25, 2019); *In re Target*, 309 F.R.D. 482 (D. Minn. 2015); *In re Heartland Payment Sys., Inc.*

*Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040 (S.D. Tex. 2012). This Action should similarly be certified.

### 1. The Settlement Class is sufficiently numerous.

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). While there is no numerical requirement for satisfying the numerosity requirement, forty class members generally satisfies the numerosity requirement. *Alcantara v. CNA Mgmt., Inc.*, 264 F.R.D. 61, 64 (S.D.N.Y. Dec. 8, 2009); *Iglesias-Mendoza v. La Belle Farm, Inc.*, 239 F.R.D. 363, 370 (S.D.N.Y. Jan. 29, 2007); *see also Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Here, the Parties have identified at least 168,000 individuals whose data was potentially impacted by the Data Incident. Joint Decl. ¶ 18. The large number of individuals in the Settlement Class renders joinder impracticable. As such, the numerosity requirement is easily satisfied.

### 2. Questions of law and fact are common to the Settlement Class.

Commonality requires Plaintiffs to demonstrate "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold for meeting this prong is not high—commonality does not require that every question be common to every member of the class, but rather that the questions linking class members are substantially related to the resolution of the litigation and capable of generating common answers even where the individuals are not identically situated. *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. at 175 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A plaintiff may meet the commonality requirement where the individual circumstances of class members differ, but "their injuries derive from a unitary course of conduct by a single system." *Marisol A.*, 126 F.3d at 377. "Even a single common legal or factual question

will suffice." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 162, (S.D.N.Y. Mar. 19, 2014) (quoting *Freeland v. AT & T Corp.*, 238 F.R.D. 130, 140 (S.D.N.Y. Aug. 17, 2006)).

Here, the commonality requirement is met because Plaintiffs can demonstrate numerous common issues exist. For example, whether Defendants failed to adequately safeguard the records of Plaintiffs and other Settlement Class Members is a question common across the entire Settlement Class. Defendants' data security safeguards were common across the Settlement Class, and those that applied to the data of one Settlement Class Member did not differ from those safeguards applied to another.

Other specific common issues include, but are not limited to:

- Whether Defendants unlawfully lost or disclosed Plaintiffs' and Settlement Class Members' Personal Information;

- Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of information compromised in the Data Incident;

- Whether Defendants' data security systems, prior to and during the Data Incident, complied with applicable data security laws and regulations; and

These common questions, and others alleged by Plaintiffs in their Amended Class Action Complaint, are central to the causes of action brought here, will generate common answers, and can be addressed on a class-wide basis. Thus, Plaintiffs have met the commonality requirement of Rule 23.

### 3. *Plaintiffs' claims and defenses are typical of the Settlement Class*

Typicality under Rule 23(a)(3) is satisfied where "each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the

defendant's liability." *In re Flag Telecom Holdings, Ltd. Securities Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) (internal quotation omitted); *see also Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144, 155 (S.D.N.Y. Nov. 26, 2002). The crux of the typicality requirement is to ensure that "maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Marisol A.*, 126 F.3d at 376.

Here, Plaintiffs' and Settlement Class Members' claims all stem from the same event—the Data Incident—and the cybersecurity protocols that Defendants had (or did not have) in place to protect Plaintiffs' and Settlement Class Members' data. Thus, Plaintiffs' claims are typical of the Settlement Class Members' and the typicality requirement is satisfied.

### 4. *Plaintiffs and Class Counsel will provide fair and adequate representation for the Settlement Class*

Plaintiffs must be able to provide fair and adequate representation for the Settlement Class. To satisfy the adequacy of representation requirement, a plaintiff must establish that: (1) there is no conflict of interest between her and other members of the class; and (2) her counsel is qualified, experienced, and generally able to conduct the litigation. *Bolanos*, 212 F.R.D. at 156 (quoting *Marisol A.*, 126 F.3d at 378); *see Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624-25 (1997).

Here, Plaintiffs' interests are aligned with those of the Settlement Class in that they seek relief for injuries arising out of the same Data Incident. Plaintiffs and Settlement Class Members' data was allegedly compromised by Defendants in the same manner. Under the terms of the Agreement, Plaintiffs and Settlement Class Members will all be eligible for reimbursement for costs and time expended in managing the personal impact that the Data Incident may have had on them. Moreover, each of their data will be safeguarded in the future by the increased security protections Freestyle has agreed to put into place.

Further, Class Counsel have decades of combined experience as vigorous class action litigators and are well suited to advocate on behalf of the Settlement Class. *See* Joint Decl. ¶¶ 40-44, Exs. 1-3. Moreover, they have put their collective experience to use in negotiating an early-stage settlement that guarantees immediate relief to Settlement Class Members. Thus, the requirements of Rule 23(a) are satisfied.

> ### 5.  *Because common issues predominate over individualized ones, class treatment is superior*

To show that common issues predominate, Plaintiffs must demonstrate that common questions of law or fact relating to the Settlement Class predominate over any individualized issues. *Bolanos*, 212 F.R.D. at 157. This requirement "tests whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc.,* 521 U.S. at 623. The predominance requirement is met when the defendant's wrongful acts involve common practices, or when the defendant has a common defense. *Fox v. Cheminova,* 213 F.R.D. 113, 130 (E.D.N.Y. Feb. 28, 2003) (citing *In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 145, 166-167 (2d Cir. 1987)). Predominance is regularly met in cases where the focus is on the conduct of a defendant rather than that of individual plaintiff, making it particularly susceptible to common, generalized proof. *Cohen,* 262 F.R.D. at 159.

In this case, the key predominating questions relate to the terms of the contracts alleged between Plaintiffs and Defendants, whether Defendants breached their obligations to Plaintiffs under those alleged contracts, the nature and amount of any benefit conferred by Plaintiffs on Defendant Freestyle, and the extent to which it would be unjust for freestyle to retain the value of such benefit under the circumstances of this case. The common questions that arise from Defendants' conduct predominate over any individualized issues.

Other courts have recognized that the types of common issues arising from data breaches

predominate over any individualized issues. *See, e.g.*, *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 312-15 (N.D. Cal. Aug. 15, 2018) (finding predominance was satisfied because "Plaintiffs' case for liability depend[ed], first and foremost, on whether [the defendant] used reasonable data security to protect Plaintiffs' personal information," such that "the claims rise or fall on whether [the defendant] properly secured the stolen personal information," and that these issues predominated over potential individual issues); *see also Hapka v. CareCentrix, Inc.*, No. 2:16-CV-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (finding predominance was satisfied in a data breach case, stating "[t]he many common questions of fact and law that arise from the E-mail Security Incident and [Defendant's] alleged conduct predominate over any individualized issues"); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig*., 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (finding common predominating questions included whether Home Depot failed to reasonably protect class members' personal and financial information, whether it had a legal duty to do so, and whether it failed to timely notify class members of the data breach); *In re Heartland*, 851 F. Supp. 2d at 1059 (finding predominance satisfied in data breach case despite variations in state laws at issue, concluding such variations went only to trial management, which was inapplicable for settlement class).

Additionally, because the claims are being certified for purposes of settlement, there are no issues with manageability, and resolution of thousands of claims in one action is far superior to individual lawsuits. *Amchem*, 521 U.S. at 620 ("Confronted with a request for settlement-only certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.").

The resolution of tens of thousands of claims in one action is far superior to litigation via individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial

efficiency and conservation of resources over the alternative of individually litigating tens of thousands of individual data breach cases arising out of the *same* Data Incident.

The common questions of fact and law that arise from Defendants' conduct predominate over any individualized issues, a class action is the superior vehicle by which to resolve these issues, and the requirements of Rule 23(b)(3) are met. Accordingly, the Settlement Class should be certified for settlement purposes.

### B.    The Settlement Terms are Fair, Adequate, and Reasonable.

Rule 23(e)(2) permits approval of a class action settlement after the Court determines the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). In evaluating a class action settlement, courts consider factors such as: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *See City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 463 (2d Cir. 1974) (abrogated on other grounds).

Preliminary approval of a settlement agreement requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties. Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* (*"Newberg"*) § 11.25 (4th ed. 2002). Courts often grant preliminary approval without requiring a hearing or court appearance. *See Mathis v. Planet Home Lending, LLC (In re: Planet Home Lending, LLC Data Breach)*, Case No. 3:24-cv-00127-KAD at Dkt. No. 44 (D. Conn. May 13,

2024) (granting preliminary approval of class action settlement based on plaintiff's memorandum of law, attorney declaration, and exhibits); *Palacio v. E\*TRADE Fin. Corp.,* No. 10-cv-4030, 2012 WL 1058409 at \*2 (S.D.N.Y. Mar. 12, 2012) (same).

While preliminary approval is a matter of discretion for the trial court, the court must give "proper deference to the private consensual decision of the parties" in exercising its discretion. *Clark v. Ecolab Inc.,* Nos. 07 Civ. 8623, 04 Civ. 4488, 06 Civ. 5672, 2009 WL 6615729, at \*3 (S.D.N.Y. Nov. 27, 2009) (internal quotation omitted); *see also Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1079 (2d Cir. 1995). To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness." *In re Traffic Executive Ass'n,* 627 F.2d 631, 634 (2d Cir. 1980). If, after a preliminary evaluation of the proposed settlement, the court finds that it "appears to fall within the range of possible approval," the court should order that the class members receive notice of the settlement. *Newberg* § 11.25; *see also Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. at 157; *In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102; *Bourlas,* 237 F.R.D. at 354.

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.,* 228 F.R.D. 174, 184 (W.D.N.Y. 2005) (citations omitted). "Preliminary approval of a proposed settlement is appropriate where it is the result of serious, informed, non-collusive ("arm's length") negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies (such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys), and where the settlement appears to fall within the range of possible approval." *Cohen v. J.P. Morgan Chase & Co.,* 262 F.R.D. at 157; (citing *Bourlas,* 237 F.R.D.

345, 354 (E.D.N.Y. Aug. 30, 2006); *Manual for Complex Litigation*, § 30.41); *see also In re Nasdaq Antitrust Litig.,* 176 F.R.D. at 102.

### 1.    The Settlement was the result of arm's-length negotiations between the Parties with the involvement of a mediator.

A court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 35 (E.D.N.Y. 2019) (citing *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Simply put, using a private mediator reinforces the non-collusive nature of a settlement. *Capsolas v. Pasta Res. Inc.,* No. 10-cv-5595, 2012 WL 1656920 at *1 (S.D.N.Y. May 9, 2012).

Here, the Settlement resulted from good-faith, arms'-length negotiations over many months, and with the assistance of Hon. John W. Thorton (Ret.) of JAMS, who has extensive experience with both class actions generally and data privacy matters in particular. Joint Decl. ¶¶ 10-13. Although this does not in itself create a presumption of fairness, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023), it does provide an independent check on its fairness, and undercuts the possibility of collusion or similar

In this case, after fully briefing the issues, the Parties attended multiple protracted mediations where, with the assistance of Judge Thorton (Ret.), the Parties eventually reached agreement on the material terms of the Settlement. *Id.* ¶¶ 10-12. Following the mediation, the Parties spent weeks drafting and finalizing the agreement presently before the Court. *Id.* ¶¶ 13-14. Accordingly, the Court should find that the negotiated and mediated nature of the Settlement here tells in favor of its reasonableness.

### 2. *The Settlement provides substantial relief to the Settlement Class, particularly in light of the uncertainty of prevailing on the merits.*

The Settlement guarantees Settlement Class Members real relief for harms and assurance that they are less likely to be subject to similar breaches due to Freestyle's data security systems enhancements. Settlement Class Members who submit Valid Claims may choose three payments-Compensations for Losses and Lost Time and a $50 payment subject to *pro rata* increase or decrease. Compensation for Losses and Lost Time provides for compensation for (1) documented, unreimbursed ordinary losses up to a total of $4,500.00 per person; and (2) attested lost time spent of $25.00 per hour up to five hours (a total of $125.00). SA § V(75)(a)-(b). The *Pro Rata* Cash Payment offers Settlement Class Members to receive a flat cash payment, subject to a *pro rata* increase or decrease. SA § V(75)(c). Additionally, Freestyle has agreed to implement additional security enhancement protocols that will guarantee that Settlement Class Members' Personal Information will be better safeguarded in the future. SA § V(76).

The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits are uncertain. While Plaintiffs strongly believe in the merits of their case, they also understand that Defendants will assert a number of potentially case-dispositive defenses. Proceeding with litigation would open up Plaintiffs to the risks inherent in trying to achieve and maintain class certification, and prove liability—both factors considered under the test for final approval established by *Grinnell*. *See Grinnell*, 495 F.2d at 459, 463. In fact, should litigation continue, Plaintiffs would likely have to survive a motion to dismiss filed in order to proceed past the pleading stage and into litigation.

Moreover, due at least in part to their cutting-edge nature and the rapidly evolving law, data security cases like this one generally face substantial hurdles—even just to make it past the pleading stage, which Plaintiffs achieved here. *See Hammond v. The Bank of N.Y. Mellon Corp.*,

No. 08 Civ. 6060, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the Rule 12(b)(6) or Rule 56 stage). However, class certification is another hurdle that would have to be met—and one that has been denied in other data breach cases. *See, e.g., In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21 (D. Me. 2013).

Plaintiffs dispute the defenses it anticipates Defendants will likely assert to class certification—but it is obvious their success at trial is far from certain. Through the Settlement, Plaintiffs and Settlement Class Members gain significant benefits without having to face further risk of receiving no relief.

### 3. Continued litigation is likely to be complex, lengthy, and expensive.

The costs, risks, and delay of continued litigation weigh in favor of settlement approval. Although Plaintiffs are confident in the merits of their claims, the risks discussed above cannot be disregarded. Aside from the potential that either side will lose at trial, Plaintiffs anticipate incurring substantial additional costs in pursuing this Action further. Should litigation continue, Plaintiffs would likely need to defeat Defendants' motions for summary judgement, and both gain and maintain certification of the class. The level of additional costs would significantly increase as Plaintiffs begin their preparations for the certification argument and if successful, a near inevitable interlocutory appeal attempt.

### 4. The Settlement was reached after significant investigation and exchange of information.

When warranted, courts encourage early settlement of class actions because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere. *See In re Interpublic Sec. Litig.*, No. 02-cv-6527, 2004 WL 2397190 at *12 (S.D.N.Y. Oct. 26, 2004) (early settlements should be encouraged when warranted

by the circumstances of the case); *Castagna v. Madison Square Garden, L.P.*, No. 09-cv-10211, 2011 WL 2208614 at *10 (S.D.N.Y. June 7, 2011) (commending Plaintiffs' attorneys for negotiating early settlement).

Here the Parties acted responsibly in reaching an early settlement of this Action. Despite the early stage of litigation, Plaintiffs here were able to fully brief Defendant's Motion to Dismiss, complete discovery exchanges with Defendants, including expert disclosures, and complete an independent investigation of the facts to reach a full understanding of the value of the Action, as well as the attendant risks of continued litigation. Joint Decl. ¶¶ 26-29. It is the strong opinion of proposed Class Counsel that the Settlement presents a favorable result for the Settlement Class. *Id.* ¶ 29.

### 5.    *The reaction of the Settlement Class has been positive.*

Notice has not yet been issued to the Settlement Class. As such, the Court will have a better opportunity to fully analyze this factor after Notice issues and Settlement Class Members are given an opportunity to make claims, opt-out, or object. However, at this early stage, given that all Plaintiffs have reviewed, approved, and signed the Agreement, this factor weighs in favor of Preliminary Approval.

### C.    The Settlement Should be Approved Under Rule 23(e)(2)

Rule 23(e) requires courts to ensure that a class settlement is "fair, reasonable, and adequate" in light of the following factors:

(A)    the class representatives and plaintiffs' counsel have adequately represented the class;

(B)    the proposal was negotiated at arm's length;

(C)    the relief provided for the class is adequate, taking into account:

(i)    the costs, risks, and delay of trial and appeal;

(ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii)    the terms of any proposed award of attorney's fees, including timing of payment; and

(iv)    any agreement required to be identified under Rule 23(e)(3); and

(D)    the proposal treats class members equitably relative to each other.

These factors largely overlap with the *Grinnell* factors, and thus, also support Preliminary Approval. *See* Section (V)(a),(b), *supra*; *see, e.g.*, *Moses v. N.Y. Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023). Plaintiffs also state that there is no additional agreement between the Parties that would affect any term of the Agreement. Joint Decl. ¶ 15.

### D.    The Settlement Administrator Will Provide Adequate Notice.

Rule 23(e)(1) requires the Court to "direct reasonable notice to all class members who would be bound by" a proposed settlement. For classes, like this one, certified under Rule 23(b)(3), parties must provide "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which is reasonably intended, under the circumstances, "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).

The Notice provided pursuant to the Agreement is designed to meet all the criteria set forth by the *Manual for Complex Litigation*. *See* SA Exs. 1-4, Verita Decl. ¶¶7-13. Here, Defendants have agreed to disseminate direct and individual Notice, first via email to those individuals who provided record of the e-mail addresses, and then, where Defendants cannot provide the Settlement Administrator with a valid e-mail address, via Postcard Notice. SA §§ VIII(83), (84).

Not only have Defendants agreed to provide Settlement Class Members with individualized Notice via Email Notice or Postcard Notice, Publication Notice, and a Long Form Notice will also be available to Settlement Class Members on the Settlement Website, along with all relevant filings. SA § II(34), (38), (67). The Settlement Administrator will also make a toll-free telephone line available by which Settlement Class Members can seek answers to questions or request a Notice or Claim Form be mailed to them at their address. SA § VII(81)(f).

The Notices are clear and straightforward. They define the Settlement Class; clearly describe the options available to Settlement Class Members and the deadlines for taking action; describe the essential terms of the Settlement; disclose the requested Service Awards for the Class Representatives, as well as the amount that proposed Class Counsel intend to seek in attorneys' fees and costs; explain procedures for making Claims, objections, or requesting exclusion; provide information that will enable Settlement Class Members to calculate their individual recovery; describe the date, time, and place of the Final Approval Hearing; and prominently display the address and phone number of Class Counsel. *See* SA., Exs. 1-4.

The Notice is designed to be the best practicable under the circumstances, apprises Settlement Class Members of the pendency of the Action, and gives them an opportunity to object or exclude themselves from the settlement. Accordingly, the Notice process should be approved by this Court. Joint Decl. ¶ 36, Verita Decl. ¶¶7-13.

## VI.    CONCLUSION

Plaintiffs have negotiated a fair, adequate, and reasonable Settlement that guarantees Settlement Class Members significant relief in the form monetary reimbursement and equitable relief consisting of increased data security safeguards. The Settlement is well within the range of reasonable results, and an initial assessment of the *Grinell* and Rule 23(e)(2) factors favors

approval. For these and the above reasons, Plaintiffs respectfully request this Court certify the Settlement Class for settlement purposes and grant Preliminary Approval of the Settlement.

Dated: May 9, 2025

Respectfully submitted,

*/s/ Justin C. Walker*
Justin C. Walker (admitted *pro hac vice*)
Terence R. Coates (admitted *pro hac vice*)
Dylan J. Gould (admitted *pro hac vice*)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
tcoates@msdlegal.com
jwalker@msdlegal.com
dgould@msdlegal.com

Mason A. Barney (admitted *pro hac vice*)
Tyler J. Bean (admitted *pro hac vice*)
**SIRI & GLIMSTAD LLP**
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: (212) 532-1091
mbarney@sirillp.com
tbean@sirillp.com
Gary M. Klinger (admitted *pro hac vice*)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
221 West Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (847) 208-4585
gklinger@milberg.com

Joseph P. Guglielmo (CT 27481)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: 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
Facsimile: 212-223-6334
jguglielmo@scott-scott.com

*Attorneys for Plaintiffs and the Proposed Class*